# SAMUEL & STEIN

ATTORNEYS AT LAW

38 WEST 32ND STREET, SUITE 1110, NEW YORK, NY 10001
PHONE: (212) 563-9884 | FAX: (212) 563-9870 | WEBSITE: www.samuelandstein.com

| **DAVID STEIN** | July 6, 2018 | ADMITTED IN |
|---|---|---|
| dstein@samuelandstein.com | | NY, NJ, PA, IL, DC |

**VIA ECF**

Hon. Steven M. Gold, U.S.M.J.
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:    <u>Fabre v. S.N.A. Concrete Pumping Corp., et al.</u>
               *Docket No. 17-cv-5303 (SMG)*

Dear Magistrate Judge Gold:

    We represent plaintiff Alan Fabre in the above-captioned matter and submit this letter to the Court with the consent of Joshua Levin-Esptein, Esq., counsel for defendants, for the Court's assessment of and approval of the settlement agreement reached by the parties. The Settlement Agreement, executed by the parties, is being submitted contemporaneously with this letter as Exhibit A, and the parties submit that the Court should approve the settlement agreement and dismiss the case with prejudice because the settlement is a fair resolution of this matter, negotiated in an arm's length negotiation between experienced counsel.

<u>Background</u>

    Plaintiff Alan Fabre filed his complaint in this matter on September 11, 2017. The complaint asserts causes of action pursuant to the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") for unpaid overtime pay, as well as claims solely under the New York Labor Law for failure to provide wage notices and failure to provide wage statements.

    Specifically, Mr. Fabre alleged that he was employed by defendants as a concrete pump operator from approximately March 2007 through August 2015. Throughout his employment, he worked a regular schedule of twelve hours per day, six days per week, for a total of 72 hours per week. He was paid at an hourly rate throughout his employment, commencing at $15 per hour in 2007 and with (roughly) annual raises of $1 per hour until 2013, when his pay was $25 per hour. Until 2014, Mr. Fabre asserts that he was paid straight pay for all his hours worked. In 2014, after he complained to defendant Leal about his lack of overtime pay, defendants began paying him an overtime premium. Even then, however, he was not paid correctly; although his regular rate of pay was $25 per hour, he was paid just $33 per hour (rather than time-and-a-half of $37.50). He was paid in cash with no paperwork throughout his employment, and never received a wage notice as required by the Wage Theft Prevention Act.

Based on these facts, Mr. Fabre calculated his estimated damages as follows, if he prevailed at trial on *all* of his claims: overtime damages (actual and liquidated) of about $118,000 under the FLSA and NYLL[1], and $10,000 for defendants' violations of the Wage Theft Prevention Act for failing to provide wage notices or paystubs. In addition, he could recover up to $25,000 in prejudgment interest on his NYLL claims. In other words, he believes he would be entitled to a total of roughly $153,000.

## Settlement Agreement

As the Court is presumably aware from presiding over the settlement conference – and as can be seen from the Settlement Agreement submitted herewith – the parties agreed to settle Mr. Fabre's claims against defendants for a total of $85,000. While the final settlement amount is less than Mr. Fabre's maximum possible recovery, we believe this to be a fair resolution to this matter, due to *bona fide* disputes about the value of his claims and the risks attendant with continuing the litigation.

Defendants generally denied plaintiff's allegations about his work schedule, but provided no specifics, and there were no relevant time records maintained by any party to this case. Therefore, Mr. Fabre's calculations are based solely on his own recollections about his work history. To be sure, under *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946), in the absence of time records from the defendants, a wage-and-hour plaintiff's testimony can be sufficient. Nevertheless, that would have made it a disputed fact question, with little possibility of resolving the case without trial.

Additionally, it is simply unclear – and defendants' written discovery responses provided no insight into the matter – what the relationship between the two corporate defendants was. Plaintiff believed that he could have established that defendants were all jointly liable for his damages going back to the statute of limitations of 2011, but that is not certain. And defendants also denied that they met the $500,000 revenue threshold for enterprise coverage under the FLSA; while plaintiff could have refiled in state court if he was unable to prove otherwise, that would have added significant delay to the process. In any case, these would all have been facts that could only have been established at trial.

Nevertheless, the risks in this case are not primarily legal or even factual, but rather practical: Mr. Fabre would have a very difficult time collecting more money if he won a larger judgment at trial. Indeed, defendants require an extended period of time – a year and a half – to pay off the settlement amount that the parties agreed to. (While plaintiff is not convinced that defendants completely lack money, *locating* that money would pose difficulties, as defendants kept virtually no business records, and conducted much of their business in cash. And the individual defendant owns some property, but because it is co-owned with his wife it would not be available for immediate execution.)

---

[1] Because the federal statute of limitations is only three years in comparison to the NYLL's six-year period, his maximum recovery solely under the FLSA could have been no more than $14,700, split evenly between actual and liquidated damages.

By agreeing to settle at this juncture, plaintiff was able to gain a very significant percentage of the damages he was potentially owed, without the delay of waiting for trial or the risks attendant with trial. And because collectability is a serious concern, litigation delays – not to mention costs incurred by defendants in defending themselves – could have significantly impaired Mr. Fabre's ability to recover more money, regardless of his success at trial. Thus, plaintiff decided to accept defendants' offer.

## FLSA Settlement Approval

Judicial approval of a wage and hour settlement brought under the FLSA depends on whether it is fair and reasonable. Courts look to the following factors: "(1) the plaintiff's range of possible recovery; (2) the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses'; (3) the seriousness of the litigation risks faced by the parties; (4) whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel'; and (5) the possibility of fraud or collusion." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). In addition, given the purposes of the FLSA, factors that weigh against approving a settlement also include the following: (1) "the presence of other employees situated similarly to the claimant"; (2) "a likelihood that the claimant's circumstances will recur"; (3) "a history of FLSA non-compliance by the same employer or others in the same industry or geographic region"; and (4) the desirability of "a mature record" and "a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace." *Id*. at 336. (Citations omitted.) Ultimately, the settlement must reflect a fair and reasonable compromise of disputed issues with the principal question being "whether the agreement reflects a reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 366, (S.D.N.Y. 2013)) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Zeltser v. Merrill Lynch & Co.*, 2014 U.S. Dist. LEXIS 135635, *16 (S.D.N.Y. Sept. 23, 2014) (citations omitted).

Applying these factors, plaintiff suggests that they weigh in favor of settlement approval. The total settlement amount is 56% of his maximum possible recovery. And even after attorneys' fees, Mr. Fabre will be receiving complete recovery of his claimed FLSA damages *including* 100% liquidated damages. On top of that, he will be receiving a significant portion of his claimed (actual) NYLL damages. He will receive these funds without running any risk or having to prove his claims. Settlements resulting in a much lower percentage of potential recovery are routinely approved. *See, e.g., Redwood v. Cassway Contracting Corp.*, 2017 WL 4764486 at *2 (S.D.N.Y. Oct. 18, 2017) (net settlement of 29.1% of FLSA plaintiffs' maximum recovery is reasonable); *Beckert v. Ronirubinov*, 2015 WL 8773460, at *2 (S.D.N.Y. Dec. 14, 2015)(25% of potential recovery reasonable); *Larrea v. FPC Coffees Realty Co.*, 2017 WL 1857246 at *2 (S.D.N.Y. May 5, 2017)(net settlement of 43% of FLSA plaintiffs' maximum recovery is reasonable). And although this settlement agreement calls for installment payments, Mr. Fabre is protected by a confession of judgment for 200% of the settlement amount.

The settlement will also enable the parties to avoid the delay, burdens and expenses of

trial, as well as the litigation risks that always accompany same. Courts consider settlements fair and reasonable when, as is the case here, they take into account the potential risks of litigation. See e.g., *Martinez v. Hilton Hotels Corp.*, 2013 U.S. Dist. LEXIS 117738, *9 (S.D.N.Y. Aug. 20, 2013) (Court found settlement reasonable because, inter alia, it was a "compromise over contested issues" "in light of the unpredictability of the outcome at trial"); *Garcia v. BAE Cleaners Inc.*, 2012 U.S. Dist. LEXIS 51867, at *2 (S.D.N.Y. April 12, 2012) (Court held the settlement fair and reasonable even though the settlement amount was less than the potential liquidated damages awardable under the FLSA because it "reflect[ed] a reasonable compromise over" issues that had been "contested in the litigation"). Accordingly, this factor supports approving the Settlement Agreement as fair and reasonable.

Arm's length bargaining between represented parties weighs in favor of finding a settlement reasonable. *Lliguichuzhca*, 948 F. Supp. 2d at 366; *Zeltser*, 2014 U.S. Dist. LEXIS 135635, *17 (finding an FLSA settlement reasonable where, as here, it was the result of arm's-length negotiations and "Plaintiffs and Defendants were represented by counsel experienced in wage and hour law.") In this case, counsel for plaintiff are experienced wage-and-hour litigators, and because the settlement negotiations in this case were presided over by the Court, Your Honor has firsthand knowledge that the negotiations were conducted on an arm's length basis. Moreover, prior to entering into the settlement agreement, plaintiff thoroughly considered the risks and benefits of continuing the litigation. The Settlement Agreement reflects the conclusion on the part of experienced counsel for all parties that the terms were a fair and reasonable assessment of their respective risks.

Finally, other factors present do not weigh against a settlement. Mr. Fabre no longer works for defendants, so there is no risk he will be subject to the same treatment in the future. There are no other parties to this case who will be affected by this settlement, and in the ten months that this case has been pending, no other employees have come forward to join. Additionally, this case presents no novel questions of law that would benefit from extensive litigation.

Pursuant to counsel's retainer agreement with plaintiff, we will be reimbursed for out-of-pocket expenses of $721.50 (filing fee, service of process, subway fare, and interpretation)[2] and will retain 1/3 of the net settlement (i.e., an additional $28,092.83) as attorneys' fees. Based on our experience in handling FLSA matters, this is a standard arrangement in this District, and is routinely approved by courts in this Circuit. See, e.g., *Garcia v. Pancho Villa's of Huntington Village, Inc.*, 2012 U.S. Dist. LEXIS 144446, *21 (E.D.N.Y. Oct. 4, 2012) (noting that counsel's request for one-third of FLSA clients' recovery is "reasonable and consistent with the norms of class litigation in this circuit"); *Cortes v. New Creators, Inc.*, 2016 WL 3455383, at *5 (S.D.N.Y. June 20, 2016) (holding fee award of one-third of settlement "consistent with `contingency fees that are commonly accepted in the Second Circuit in FLSA cases.'" (quoting *Najera v. Royal Bedding Co.*, 2015 WL 3540719, at *3 (E.D.N.Y. June 3, 2015)); *Mireku v. Red Vision Sys., Inc.*, 2013 U.S. Dist. LEXIS 172102 (S.D.N.Y. Dec. 6, 2013) (finding that where, as here, the fee award is consensual since "Plaintiff has explicitly approved the agreement, including the amount of fees to her

---

[2] The Court can take judicial notice of the filing fee; receipts for other expenses (except subway fare) are attached as Exhibit C.

counsel" the award should be approved); *see also Porzig v. Dresdner, Kleinwort, Benson, North America LLC*, 497 F.3d 133, 141 n.4 (2d Cir. 2007) ("any attorney's fee ultimately belongs to [plaintiff], the client, and not the attorney," and courts "assume[s] the attorney and client will settle the distribution of the attorney's fees . . . according to their own contract terms, which are beyond the province of this Court") (citations omitted). Moreover, it represents an attorneys' fee amount of approximately 1.84 times our lodestar, a multiplier well within the range of those commonly approved in FLSA contingency litigation. *Pucciarelli v. Lakeview Cars, Inc.*, 2017 WL 2778029 at *2 (E.D.N.Y., June 23, 2017) ("Courts have routinely found that doubling the lodestar yields a reasonable fee in the context of FLSA settlements.")(citing cases); *Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 439 (S.D.N.Y. 2014)("multiplier near 2 should, in most cases, be sufficient compensation for the risk associated with contingent fees in FLSA cases.")

While we are applying for a percentage of the recovery as is common in FLSA cases, we believe that our lodestar cross-check figure is reasonable; it was calculated as follows:

| Attorney | Class | Rate[3] | Hours | Total |
|---|---|---|---|---|
| David Stein | Senior Partner | $375 | 20.30 | $7,081.25 |
| David Nieporent | Senior Associate | $325 | 25.10 | $8,157.50 |
| **TOTAL** | | | **44.30** | **$15,238.75** |

A copy of our time records, maintained contemporaneously in Timeslips software, is attached in support of these figures as Exhibit B. I am a founding partner of Samuel & Stein, I have been practicing law since 1990, have been admitted in the state of New York since 2000, and I have been focusing my practice almost exclusively on wage-and-hour cases since 2008, serving as counsel of record in more than 350 such cases. In addition to being admitted in the Southern and Eastern Districts of New York, the District of New Jersey, and the Eastern District of Michigan, I am admitted to practice in Illinois, Pennsylvania, New Jersey, and the District of Columbia. My senior associate, David Nieporent, has been practicing law since 2001 and has been admitted to practice in the state of New York since 2011. Since 2008, his practice has consisted primarily of wage-and-hour litigation, and he has second chaired several wage and hour trials in federal court. He is also admitted to practice in the state of New Jersey, as well as having been admitted to practice in the Southern and Eastern Districts of New York, the District of New Jersey, and the Eastern District of Michigan.

These rates are well within the norm of billing rates for cases of this nature in this district. *See Mendez v. Casa Blanca Flowers, Ltd.*, 2014 WL 4258943, at *6 (E.D.N.Y. July 8, 2014), report and recommendation adopted, 2014 WL 4258988 (E.D.N.Y. Aug. 27, 2014) ("Recent decisions in the Eastern District of New York have determined that reasonable hourly rates in FLSA cases are approximately $300-$450 for partners, $200-$325 for senior associates, $100-$200 for junior associates, and $60-80 for legal support staff.") (collecting cases); *Tacuri v. Nithin Constr. Co.*, 2015 WL 790060, at *13 (E.D.N.Y. Feb. 24, 2015) (prevailing hourly rates for partners range from $300 to $400); *Griffin v. Astro Moving & Storage Co. Inc.*, 2015 WL 1476415, at *8 (E.D.N.Y. Mar. 31,

---

[3] Travel time billed at half. In addition, a handful of basic tasks that did not require the expertise of a senior partner were billed at just $125.

2015) (reasonable hourly rates are $200 to $325 for senior associates). We were recently awarded fees of $375 and $325 in a wage and hour case. *Fabre et al. v. Highbury Concrete Inc., et al.*, 2018 WL 2389719 (N.Y.E.D. May 24, 2018). And in the Southern District, we were recently awarded fees of $400 and $325, respectively, by Judge Broderick in *Severino v. 436 West LLC, et al.*, 13- cv-3096 (VSB), Docket Entry 80 (October 28, 2016) and Judge Briccetti in *Lu v.. Nails by Ann, Inc., et al.*, 15-cv-8906 (VB), Docket Entry 48 (April 19, 2018).

Finally, we point out that, consistent with the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), this Agreement does not contain a confidentiality provision or general release, and the non-disparagement provision carves out an exception for truthful statements.

For all of the reasons set forth above, the parties request that the Court approve the settlement agreement attached hereto and enter the stipulation of dismissal filed herewith. We hope that this letter provides the Court with the information that it needs to assess the fairness of this settlement. We are available at the Court's convenience should the Court have any questions regarding the contents of this letter, or if the Court requires any additional information or documentation.

Very truly yours,

David Stein

Enc.

cc: Joshua Levin-Epstein, Esq. (via ECF)